UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at LONDON)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 6:18-CR-065-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| MARLON JERMAINE JOHNSON, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Marlon Jermaine Johnson's Motion For Production Of Jury Data. [R. 327]. The United States responded, [R. 335], and Defendant replied. [339]. For the reasons stated herein, Defendant's Motion is **GRANTED IN PART and DENIED IN PART.**

## I.    BACKGROUND

Defendant was first tried in this matter on May 17, 2021, in the Southern Division (London), Eastern District of Kentucky. The jury selection process summoned approximately 49 potential jurors; none were black. Upon realizing the lack of potential black jurors, Defendant—a black man—objected to the venire after *voir dire* had begun. [R. 294; R. 296]. The Court overruled Defendant's objection due to timeliness issues and failure to demonstrate a *prima facie* case under the relevant law. [R. 296]. As a result, the trial proceeded, but ultimately resulted in a mistrial. [R. 298].

Following the mistrial, and at the request of the Defendant, the Court approved the hiring of a jury pool/statistical consultant on July 21, 2021 to assist the Defendant in obtaining and analyzing jury data from the Eastern District of Kentucky. [R. 314; R. 319]. The Sixth Circuit

provided the final approval on or about September 24, 2021. *See* [R. 327, p. 2]. On October 4, 2021, Defendant sent the Clerk of the Court for the Eastern District a written request for 32 items of jury data. [R. 327–1]. In response, on October 20, 2021, the Clerk provided a "Report on Operation of the Jury Selection Plan" for the London Division dated October 12, 2021, commonly called the AO-12[1] (the "Current AO-12, London Division") and the District's current "Plan for the Random Selection and Qualification of Grand and Petit Jurors" dated June 29, 2018. [R. 327–2]. Shortly thereafter, the Clerk informed Defendant that no further data would be provided without a Court order. With a retrial looming, Defendant filed this motion for production of jury records and data. [R. 327, p. 4].

In his Motion, Defendant seeks "necessary backwards looking data covering a significant timeframe . . . which include requests for data going back up to 10 years," to examine a potential jury challenge under the Constitution and the Jury Selection and Service Act. [R. 321, p. 4]. Defendant argues that his requests "are not limited to just the London Division, but are applicable to the jury data for the entire Eastern District of Kentucky." *Id*. In its Response, the United States agrees that Defendant, pursuant to federal law, is entitled to data for the "District's past Jury Wheels dating back to at least four years." [R. 335, pp. 6–7]. The United States, however, opposes Defendant's 32-item request that sweeps broader, in its opinion, than the law allows. *Id.* at 7–11.

## II.    DISCUSSION

---

[1] Generally, an AO-12 form provides the following information on the current, non-emptied master jury wheel used by the Division: (1) general information about the master wheel, including identification of the source data and number of names placed in the wheel; (2) data related the sampling of returned questionnaires, including number of forms mailed, returned, returned undeliverable and demographic data concerning the race, ethnicity, and sex of those individuals returning forms; (3) data related to the sampling of the qualified jury wheel including relevant demographic data of the qualified jury wheel; and (4) a comparison of the jury wheel sample against the population of the jury division.

Defendant's Motion recounts he is investigating a potential jury challenge pursuant to the right to equal protection guaranteed by the Fifth Amendment, and the fair cross-section protections of the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.* (the "JSSA" or "Act"). [R. 327]. Under the Fifth Amendment, a "defendant challenging a venire on equal protection grounds bears the burden of showing that the venire was selected in an intentionally discriminatory manner." *United States v. Allen*, 160 F.3d 1096, 1104 (6th Cir. 1998). A "defendant may establish a *prima facie* case of such discrimination by making one of two showings: (1) that the defendant's race was substantially underrepresented on the particular venire from which the defendant's jury was selected AND that the venire was selected under a practice providing an opportunity for discrimination; or (2) that there has been systematic, long-term underrepresentation of defendant's race on jury venires." *Id.* at 1104–05; *see also Jefferson v. Morgan*, 962 F.2d 1185, 1191 (6th Cir. 1992). The Sixth Circuit applies this dual set of tests for grand and petit jury challenges. *Allen*, 160 F.3d at 1105.

The Sixth Amendment secures to criminal defendants "the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314, 319 (2010); *see also Taylor v. Louisiana*, 419 U.S. 522, 526 (1975); *Allen*, 160 F.3d at 1103. In *Duren v. Missouri,* 439 U.S. 357 (1979), the Supreme Court held that a defendant may establish a *prima facie* fair cross-section violation by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 364; *see also Allen*, 160 F.3d at 1103. Exclusion is "systematic" under the third prong if it is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366; *United*

*States v. Suggs*, 531 Fed. App'x 609, 619 (6th Cir. 2013). Although the Sixth Amendment requires that petit jurors be drawn from a source broadly representative of the community, there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538. Stated another way, "Defendants are not entitled to a jury of any particular composition." *Id.*

Similarly, the JSSA articulates a federal policy that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. The fair cross-section test under the JSSA "is essentially identical to the *Duren v. Missouri* test used in the Sixth Amendment fair-cross-section analysis." *Allen*, 160 F.3d at 1102; *see also United States v. Morton*, 843 Fed. Appx. 699, 704 (6th Cir. 2021). Though not addressing the merits (indeed no such motion has been filed), these standards inform the Court on the disclosure issues at hand.

To implement the JSSA's provisions, the Act articulates certain rules and procedures governing the selection of grand and petit juries. As the Supreme Court observed in *Taylor*, Congress, in the JSSA, established "the machinery" by which the Act's stated policies were to be implemented. *Taylor*, 419 U.S. at 529. "The Act is not simply an idle theoretical exercise setting forth an aspirational ideal of fairness." *United States v. Rice*, 489 F. Supp. 2d 1312, 1315 (S.D. Ala. 2007). Indeed, serious repercussions may result from noncompliance, as a criminal defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a); *United States v. Pritt*, 458 F. App'x 795, 799 (11th Cir. 2012) ("The JSSA provides a remedy for a defendant only if a violation is 'substantial.'"). As part of its

"machinery," the Act contains certain disclosure provisions to ensure defendants who are contemplating a jury challenge have access to the records and information needed to assess a challenge. *See* 28 U.S.C. §§ 1867(f), 1868. Courts evaluating requests for jury information are guided by these disclosure provisions. See *United States v. McLernon*, 746 F.2d 1098, 1122–23 (6th Cir. 1984) *holding modified by United States v. Damra*, 621 F.3d 474 (6th Cir. 2010); *United States v. Sydnor*, 6:16-CR-21-ART (E.D. Ky. February 2, 2017), ECF 165.

<u>Current Jury Wheel Information</u>

Defendant's request for information concerning current jury wheels is addressed in § 1867(f) of the Act. To ensure that defendants are armed with the necessary data to assess the viability of any contemplated challenge to jury selection processes, the Act provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion. Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both.

28 U.S.C. § 1867(f). The Supreme Court has interpreted § 1867(f) as providing an "unqualified right to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975). A defendant need not prove that his potential challenge to the jury selection process has merit as a prerequisite to accessing jury records. *See Government of Canal Zone v. Davis,* 592 F.2d 887, 889 (5th Cir. 1979) ("Since the appellants' right to inspection was unqualified, whether or not the accompanying affidavit established a prima facie case of defective jury selection process is of no import."). Instead, "[t]o avail himself of the right of access to jury selection records, a litigant

need only allege that he is preparing a motion to challenge the jury selection process." *United States v. Royal,* 100 F.3d 1019, 1025 (1st Cir.1996) (finding the lower court erred in requiring showing of probable success on the merits as a condition to accessing records); *see also In re Nat'l Prescription Opiate Litig.*, No. 18–OP–45090, 2019 WL 4739360 at *3 (N.D. Ohio Sept. 27, 2019) ("[I]n requesting information under § 1867(f), a defendant does not need to show probable success or probability of merit in a proposed jury challenge."); *United States v. Diaz,* 236 F.R.D. 470, 477 (N.D. Cal. 2006) (allegation that defendants expect to file a jury challenge motion is sufficient to trigger right of access); *United States v. Williams,* No. CR. 06–00079 DAE, 2007 WL 1223449, at *5 (D. Haw. Apr. 23, 2007) (similar).

Though the *Test* Court did not define "jury lists," the Sixth Circuit has evaluated § 1867(f) and placed some limits on the "unqualified" right of inspection. In *McLernon*, the Sixth Circuit granted disclosure of the "Master Lists and the relevant demographic data about the general pool from which the specific . . . jurors were selected," but denied access to questionnaires and personal information about jurors. *McLernon*, 746 F.2d at 1122. Relying on *Test*, the *McLernon* Court found that in the particular facts of that case, access to this information satisfied the defendant's "unqualified right" to inspection under § 1867(f). *Id.* at 1123. The *McLernon* Court reasoned, "the right to inspection extends to all jury selection materials relevant to a complete determination of whether a grand or petit jury has in fact been selected 'at a random from a fair cross-section of the community.'" *Id.* (quoting *Test*, 420 U.S. at 30); *see also United States v. Savage*, 970 F.3d 217, 253 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 481 (2021) (highlighting the statistical information containing race and ethnicity provided to the defendant through discovery, including: potential jurors on the master and qualified wheels for 2007, 2009

and 2011; potential petit jurors who were summoned; and the subset of potential petit jurors who "responded to the summons and showed up to fill out a jury questionnaire . . . . ").

Further, federal courts across the country have uniformly declined to allow unfettered access to all jury-related records. *See, e.g., United States v. Fieger*, No. 07- 20414, 2008 WL 1902054, at *2 n.7 (E.D. Mich. Apr. 29, 2008) ("[A defendant's right under subsection (f)] encompasses only such data as a defendant needs to challenge the jury selection process."); *Rice,* 489 F. Supp.2d at 1319–24 (under the JSSA, Defendant has no right to inspect entire original source list received from Secretary of State; no right to inspect juror questionnaires; and no right to inspect data concerning prospective jurors who ignored summonses or failed to appear for jury service); *Diaz,* 236 F.R.D. at 482 ("The right to discovery by the Act and *Test* is not limitless."); *United States v. Carlock,* 606 F. Supp. 491, 493 (E.D.La.1985) ("[T]he right of access involved here is not without limitations"); *United States v. Gotti,* No. S8–02CR743(RCC), 2004 WL 2274712, at *6 (S.D.N.Y. Oct.7, 2004) (defendant making § 1867(f) request "is not entitled to unencumbered access to juror information"); *United States v. Causey,* No. H-04-025, 2004 WL 1243912, at *9, *18 (S.D. Tex. May 25, 2004) (collecting cases for proposition that while a criminal defendant has an essentially unqualified right to inspect master list from which members of his grand and/or petit jury were selected, access to other jury records can be restricted). As one court observed, § 1867(f) "provides that the contents of records or papers used by the clerk shall not be disclosed unless those records' contents are shown to be 'necessary' for the preparation of a motion" alleging substantial failure to comply with the Act. *United States v. Davenport,* 824 F.2d 1511, 1515 (7th Cir.1987); *Pritt*, 458 F. App'x at 800 (affirming the trial court's denial of defendant's motion for additional discovery

where the defendant was given "access to records that enabled him to calculate the relevant absolute disparities").

<u>Past Jury Wheel Information</u>

Defendant's request for previous jury information is addressed in 28 U.S.C. § 1868, which provides:

> After the master jury wheel is emptied and refilled pursuant to section 1863(b)(4) of this title, and after all persons selected to serve as jurors before the master wheel was emptied have completed such service, all records and papers complied and maintained by the jury commission or clerk before the master wheel was emptied shall be preserved in the custody of the clerk for four years or for such longer period as may be ordered by a court, and shall be available for public inspection for the purpose of determining the validity of the selection of any jury.

28 U.S.C. § 1868. The plain language of this statute entitles Defendant to the inspection of such records going back a minimum of "four years" (or longer if ordered by the court) for "the purpose of determining the validity of the selection of any jury." *Id*. Courts analyzing the statute related to potential challenges under the Act or Constitution have generally tracked the statute's four-year lookback and included any relevant demographic records maintained by the clerk's office for public inspection, but excluding personal information. *See Sydnor*, 6:16-CR-21-ART at ECF 165 (ordering disclosure of current and past jury information district-wide covering five years and noting the order "does not compel the jury administrator to generate any new reports, only whatever AO-12 forms (or other compilations of racial demographic data) [that] already exist pertaining to such past and current jury wheels, qualified pools, grand juries, and petit juries in the four named Divisions").*United States v. O'Reilly*, No. 05-CR-80025, 2008 WL 302310, at *2 (E.D. Mich. Feb. 4, 2008) ("Regarding previous wheels, the Court limits access to those materials that are publicly available pursuant to 20 U.S.C. § 1868."); *Fieger*, 2008 WL 1902054, at *6-7 (requiring defendant to exhaust the information publicly available through § 1868 before

seeking disclosure of further information regarding the composition of the grand jury); *see also*

*United States v. Luna-Santilles*, 554 Fed. Appx. 402, 412–13 (6th Cir. 2014) (declining to find

that defendant was denied sufficient discovery where he had been "entitled to review information

regarding juror number, race, and Hispanic ethnicity for the current jury wheel, and records

relating to prior jury wheels were available for public inspection pursuant to 28 U.S.C. § 1868").

With these standards in mind, the Court will address whether that right to inspection

covers the 32 categories of information enumerated in Defendant's Motion.

    1.  <u>The Jury Plan for the Eastern District of Kentucky in effect at the time trial</u>
<u>jurors will be summoned in this case and any plan that has been in effect since</u>
<u>2015, including but not limited to the "Plan for the Random Selection and</u>
<u>Qualification of Grand and Petit Jurors" certified on June 7th, 2018 and filed</u>
<u>June 28th, 2018.</u>

The United States District Court for the Eastern District of Kentucky has adopted a Plan

for the Random Selection and Qualification of Grand and Petit Jurors June 28, 2018 (the "Jury

Plan"). The Jury Plan was approved by the Reviewing Panel of the Judicial Council for the Sixth

Circuit of the United States. The Jury Plan was previously provided to the Defendant by the

Clerk of Court (the Clerk) on October 20, 2021 and is attached to the Defendant's Motion. [R.

327–2]. Further, the Jury Plan is publicly available on the Court's website. *See* PLAN FOR THE

RANDOM SELECTION AND QUALIFICATION OF GRAND PETIT JURORS, UNITED STATES DISTRICT

COURT EASTERN DISTRICT OF KENTUCKY: JURY INFORMATION,

https://www.kyed.uscourts.gov/sites/kyed/files/Jury_Plan_FILED.pdf (last visited Jan. 1, 2022).

Accordingly, Request #1 for the current Jury Plan is **DENIED AS MOOT**. To the extent

this Request seeks *previous* Jury Plans dating back to 2015, the request is **GRANTED**. Though

this information seems of limited value, because the Court is ordering disclosure of past jury

wheel information pursuant to this Order, the Court will similarly order disclosure of the Jury

Plan in effect immediately prior to the current Jury Plan. Accordingly, the **Clerk SHALL make such prior Jury Plan available for Defendant's inspection and copying within 7 days of entry of this Order.**

>    2. A description of any changes from the previous procedures or from the Jury Plan for the trial jury or creation of the trial jury because of the Covid-19 pandemic.

After consultation with the Clerk, the Court advises that no changes to the Jury Plan have been made because of the COVID-19 pandemic. According, Request #2 is **DENIED AS MOOT**.

>    3. Any order of the Court that affects the previous procedures or the Jury Plan for the trial jury or creation of the trial jury because of the Covid-19 pandemic.

The London Division has entered Orders related to health and safety measures to be followed for all cases in the London Division in the wake of COVID-19. These Orders do not affect the Jury Plan, but rather address health and safety measures for hearings, trials, and other in-court proceedings. These Orders have been entered on the docket for each affected case, including this case. Such Orders, therefore, are already available to Defendant and are part of the public record. Accordingly, this part of Request #3 is **DENIED AS MOOT**.

Further, no orders have been entered affecting the Jury Plan due to COVID-19. Accordingly, this part of Request #3 is **DENIED**, as no such orders exist.

Relatedly, this Court has previously utilized a COVID Questionnaire for summoned trial jurors who have been noticed to appear for trial, inquiring about COVID-related matters for purposes of ensuring the health and safety of trial jurors, the parties, counsel, and Court staff. That information is made available to the parties no later than seven days prior to trial. Any Questionnaires that this Court may utilize in the Defendant's upcoming trial scheduled for April

18, 2022 will be made available to him, and the Request is **GRANTED** in this regard, but is currently **premature**.

    4.  <u>The jury division or divisions chosen for the trial jury in this case as described in the Jury Plan Section 10.1.</u>

The Court is unclear precisely what information the Defendant seeks in this Request. The trial jury in this case will be chosen from the Qualified Wheel, London Division, and specifically the London Pool #401, as defined in the response to Request #15.

    5.  <u>A description of the reason for the choice of jury division for the trial jury in this case.</u>

The Court is unclear precisely what information the Defendant seeks in this Request. The trial jury in this case will be chosen from the Qualified Wheel, London Division, and specifically the London Qualified Pool #401, where this matter was indicted.

    6.  <u>If there will be a drawing of a jury of the district for the trial jury in this case as described in the Jury Plan Section 13.1, the calculation of the pro-ration as described in the Jury Plan Section 13.1 (1).</u>

Defendant's jury will be drawn from the Qualified Wheel, London Division, not the District as a whole. This Request is **DENIED** as irrelevant.

    7.  <u>Any AO-12 form or JS-12 form created which relates to the District and Divisional Master Jury Wheels and Qualified Jury Wheels that will be used to summon the trial jurors in this case as required by 28 U.S.C. § 1863(a).</u>

    8.  <u>Any AO-12 form or JS-12 forms completed in the last ten years</u>

To the extent this Request seeks the Current AO-12, London Division, this information was previously provided to the Defendant by the Clerk of Court on October 20, 2021, and is attached to Defendant's own Motion. [R. 327–2]. Accordingly, the Request for the Current AO-12, London Division is **DENIED AS MOOT**.

To the extent this Request seeks any other *current or prior* AO-12 or JS-12 forms District-wide going back ten years, it is **GRANTED in part and DENIED in part.** The request is **GRANTED** with respect to any district-wide AO-12 and JS-12 forms for the current jury (2021) wheel and the past (2019 and 2017) jury wheels (and specifically related to Master Wheels, Qualified Wheels, and Pools).[2] The **Clerk SHALL make any and all such District-wide current (2021) and past (2019, 2017) AO-12s and JS-12s available for Defendant's inspection and copying within 7 days of entry of this Order.** *See* 28 U.S.C. §§ 1861, 1867(f), 1868; *United States v, Jackson*, 768 F. App'x. 400, 404 (6th Cir. 2019) (evaluating defendant's equal protection challenge by considering the *district's* jury pool statistics, specifically the qualified jury wheel, for the current and two most recent years the district re-filled the wheel). This demographic data for the 2021, 2019 and 2017 wheels is reasonably necessary for Defendant to assess and prepare any motion under the Act or Constitution. *See Allen*, 160 F.3d at 1103 (evaluating a Sixth Amendment fair cross section challenge and finding that "Appellants, however, must show more than that their particular panel was unrepresentative."); *Suggs*, 531 Fed. Appx. at 619 (evaluating a challenge under the Sixth Amendment fair cross-section protections and holding, "It is incumbent upon the defendant to show more than that a particular jury panel was unrepresentative."). The United States agrees that Defendant is entitled to this information, [R. 335, pp. 6–7]. Further, after consultation with the Clerk and Chief Judge, the information ordered disclosed under this Request and otherwise in this Order concerning past jury information is consistent with what the Clerk's Office has made available for public inspection under the provisions of 18 U.S.C. § 1868. *See also Sydnor*, 6:16-CR-21-ART at ECF

---

[2] The Jury Plan for the Easter District of Kentucky requires that "[t]he contents of records or papers used by the Clerk in connection with the jury selection process during the *past jury wheels* may be disclosed only upon the approval of the Chief Judge." Jury Plan, § 14.2 (emphasis added). The undersigned has consulted with Chief Judge Danny Reeves in compliance with the Jury Plan.

12

165. Moreover, it provides the Defendant with the information needed to assess a potential jury challenge.

To the extent the Request seeks jury records for the period prior to the 2017 wheels, it is **DENIED**. 28 U.S.C. § 1868; *Sydnor*, 6:16-CR-21-ART at ECF 165; *see also Rice*, 489 F. Supp. 2d at 1321 (denying defendant's request for "records of all venires and jury panels called for jury duty in the last ten years").

> 9. Any other statistical or demographic analyses produced to ensure the quality and compliance of the Master Jury Wheels and Qualified Jury Wheels that will be used to summon trial jurors in this case with the Jury Plan Sections 1.1 and 2.1, Jury Selection and Service Act and constitutional requirements.

After consultation with the Clerk, the Court is unaware of any such "statistical or demographic analysis" or information generated by the Clerk other than that contained in the records otherwise being disclosed pursuant to this Order. Accordingly, in this regard, the Request is **DENIED** as no such information exists. Further, after consultation with the Clerk, the statistical data provided by the Eastern District's outside jury vendor, Sutera Data Systems ("Sutera"), related to proportionate representation under the provisions of the Jury Plan will be ordered disclosed as provided in the response to Requests #11, #20, #22.

> 10. The date when the Master Jury Wheel that will be used to summon trial jurors in this case was refilled as described in the Jury Plan Section 6.6.

Defendant has previously been provided this information, which is listed in the Current AO-12 Form, London Division, provided by the Clerk on October 20, 2021. [R. 327–2 (listing the date as January 27, 2021)]. This Request is **DENIED AS MOOT**.

> 11. The calculation that ensures each city and county within each division is substantially proportionately represented as described in the Jury Plan Section 5.2 and 5.4.

> 20. The calculation of the starting number and multiple as described in the Jury Plan Section 5.1

13

22. The name, contact information, and description of work for any vendors who participated in creating the Master Jury Wheel or Qualified Jury Wheel.

The Eastern District of Kentucky, like many districts across the country, uses an outside vendor, Sutera, to assist in implementing the Jury Plan and compiling the Master Wheel according to the procedures outlined in the Jury Plan and through use of the District's Jury Management System ("JMS"). The Jury Plan, §§ 4.1, 4.2, 5.1, 5.2, 5.3, 5.4, and 5.5, provide a basic explanation of the procedures and methodology used for random selection and proportionate representation during the jury selection process. The Jury Plan provides that "[f]or the purpose of determining proportionate representation in the master wheel, the number of registered voters in each county at the last general election for President of the United States and biennially thereafter, shall be used." Jury Plan, § 5.2. In particular, the Clerk and its vendor use the randomized process outlined in §§ 4.2 and 5.4  of the Jury Plan for compiling the Master Wheel, for selecting names from the Master Wheel for determining qualification for jury service, for compiling the Qualified Wheel, and for summoning persons from the Qualified Wheel to serve as grand and petit jurors. No one is eliminated on account of race or ethnicity. The Jury Plan provides that the Master Wheel for each division be "selected at random from the voter registration lists of each county within the respective jury divisions, on a pro rata basis." Jury Plan, § 4.1; *see also* Jury Plan, § 5.2. Calculations to ensure substantially proportionate representation are completed by Sutera and provided to the Clerk upon compiling the Master Wheel. To the extent Defendant seeks reasonable information confirming such procedures are being followed, the Court will **GRANT** this Request. The **Clerk SHALL produce the following for inspection and copying within 7 days of entry of this Order: (1) December 16, 2020 request from the Clerk to Sutera to re-fill the District-wide master jury wheels and**

**accompanying documents; and (2) January 17, 2021 letter from Sutera to Clerk and accompanying records confirming the compilation of the District-wide master wheels and proportionate representation.**

The information provided herein and ordered disclosed is sufficient to "confirm the data is consistent with the jury plan." [R. 339–1, p. 3].[3] The Defendant offers no reasonable rationale or explanation for any additional information which would, in effect, amount to a wholesale audit of the procedures of the Clerk's office (and its vendor). *Id.* Further, the information provided herein and specifically in response to, among other items, Requests #8, #23, and #24, will provide sufficient statistical and demographic data for the Defendant to review this aspect of the Clerk's implementation of the Plan. Accordingly, other than the information provided herein, the Requests numbered #11, #20 and #22 are **DENIED**. *See Rice*, 489 F. Supp. 2d at 1321–22 (denying access to similar information related to the computer programs and manuals used to devise the jury wheel); *United States v. Corbett*, No. 20-CR-213 (KAM), 2020 WL 5803243 at *5 (E.D.N.Y. Aug. 21, 2020) (denying a request for such information); *see also McLernon*, 746 F.2d at 1123 ("[W]e conclude that appellant's unqualified right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool form which the specific grand jurors were selected.").

12. The description and any statistics of the National Change of Address Database and/or other electronic address verification system used as described in the Jury Plan Section 5.5.

The Jury Plan, like many plans across the country, authorizes utilization of the National Change of Address Database ("NCOA") and/or other electronic address verification systems.

---

[3] Neither party has requested a hearing on the pending Motion, and the Court finds a hearing is not necessary. However, should the parties require additional information on the implementation of the Plan, the Court can make the Jury Administrator available, provided such request is made timely and does not further delay the proceedings in this case.

Jury Plan § 5.5. Sutera, the vendor who compiles the Master Wheel, validates the data through the NCOA during the process of compiling the Master Wheel. Sutera provides a report on the NCOA Counts. Likewise, Sutera utilizes the services of another vendor, Anchor Computer, Inc., to similarly validate the data through use of the Master Death File (MDF) created by the Social Security Administration for the purpose of culling deceased persons from the list. Other than correspondence and reports related to these processes, there is no plan related to the use of such tools, and there are no Clerk-generated "statistics" kept related to the Clerk's utilization of the NCOA database, MDF, or any other electronic verification system. If correspondence to a prospective juror is returned undeliverable, the Plan authorizes (but does not require) the Clerk to run such name through the NCOA or other verification data in an attempt to locate a current address.

Accordingly, to the extent this Request seeks the vendor correspondence and reports related to NCOA and MDF use in compiling the Master Wheel, the Court will **GRANT** this Request. The **Clerk SHALL produce the NCOA and MDF correspondence and reports provided by the vendors related to the current Master Wheels for inspection and copying within 7 days of entry of this Order.** Other than the information provided herein, this Request is **DENIED** as the information does not exist.

13. The procedures implemented related to prospective jurors who do not respond to a juror qualification form or have their juror qualification form returned from the Postal Service as undeliverable.

After consultation with the Clerk, the Court provides that if a juror fails to return his/her juror qualification form, a second juror qualification form will not be mailed. Forms returned by the post office with a forwarding address within the district will be re-mailed to the new address.

14. The date when trial jurors will be summoned in this case

16

Trial jurors under summons are typically noticed to appear two to four weeks in advance of trial. This topic will be discussed with counsel at the Pretrial Conference to be set in this case, and the information will be provided to both counsel. In this regard, the Request is **GRANTED**. However, given the trial date in this case is April 18, 2022, this Request is currently **premature.**

15. <u>The number of persons summoned from the Qualified Jury Wheel to be considered as trial jurors in this case.</u>

Currently, there are approximately 382 potential jurors under summons from the Qualified Wheel, London Division. For purposes of this Order, the Court will refer to these jurors as the "London Pool #401."[4] The current trial date is April 18, 2022, and the Court has not yet determined how many trial jurors will be noticed to appear from the London Pool #401. This topic will be discussed with counsel at the Pretrial Conference to be set in this case, and the information will be provided to both counsel. In this regard, the Request is **GRANTED**. It is generally this Court's practice to notice approximately 60 trial jurors to appear in cases such as this one. Given the trial date in this case is April 18, 2022, this Request is currently **premature.**

16. <u>The order requesting the drawing of trial jurors in this case.</u>

It is not this Court's practice to enter an order requesting the drawing of trial jurors to be noticed for service. Rather, this Court's practice related to when, how, and how many trial jurors are noticed to appear is outlined in the responses to Requests #14–16 and will be further discussed at the Pretrial Conference to be set in this case. Accordingly, this Request is **DENIED** as no such orders exist. In any event, these matters will be reviewed with trial counsel at the Pretrial Conference in this case, and counsel is free to inquire further about the Court's procedures in selecting trial jurors at that time.

---

[4] The complete title is the London Pool #601210401. Further, this pool is frequently changing as names are removed upon completion of service, deferral, excusal, and name are also added as jurors are needed to fill venires.

17. Are persons marked as excused available for summoning as described in the Jury Plan Section 7.3?

After consultation with the Clerk, the Court confirms that it is the Clerk's practice to reinsert those individuals temporarily excused (or deferred) from jury service and to reactivate their juror numbers upon expiration of the time during which they have been excused or deferred.

18. Are some persons deferred to a different date? If so, please describe the procedure used once the deferred juror attends on the deferral date including their order of consideration.

After consultation with the Clerk, the Court confirms that it is the Clerk's practice upon an approved request by a juror for a deferral to defer such jurors' service to a different date. After the expiration of the time during which the juror has been deferred, the Clerk will simply re-activate the juror's number for active service according to the juror's number.

19. The request for the source data (voter registration lists) and the response including the name, agency, and contact information.

28. The source of data in electronic form for the Master Jury Wheel used to summon trial jurors in this case as described in the Jury Plan Section 4.1 (voter registration lists). The data should include, as available, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division but not any personal information or information that could be used to identify any individual such as Name or Street Address.

By way of background, review of the Current AO-12, London Division previously provided to the Defendant reflects the Master Wheel, London Division, was last filled January 27, 2021, and will not be emptied and re-filled till 2023. [R. 327–2; Jury Plan, § 6.6]. The Master Wheel was filled from a source list provided by the Kentucky State Board of Elections. Jury Plan, § 4.1. On December 9, 2020 the Clerk sent a letter and accompanying instructions to the Kentucky State Board of Elections ("BOE") requesting voter registration data ("Letter to BOE"). On December 16, 2020, the Clerk received an e-mail from the BOE containing the encrypted

voter registration data ("E-mail from BOE"). From that source list, Sutera compiled the district-wide Master Wheels in accordance with the Jury Plan to ensure proportionate representation. By way of example, the current Master Wheel, London Division includes 8,013 names.[5] *See* Jury Plan, § 6.3. From the Master Wheel, London Division, 1,999 names were randomly drawn on February 2, 2021, for the purpose of determining qualification to serve. *See* Jury Plan, §§ 5.4, 6.3. For purposes of this Order, the Court will refer to this list of 1,999 names as the "Master Wheel Sample, London Division." The persons on the Master Wheel Sample, London Division, were sent questionnaires for the purpose of determining whether they were qualified to serve as jurors. Some 1,356 persons returned those questionnaires, and of that number, 779 were found to be qualified. [R. 327–2]. The resulting list of 779 names constitutes the Qualified Wheel, London Division. *Id*. With this backdrop in mind, the Court will address Requests #19 and #28.

Accordingly, the Requests are **GRANTED** insofar as they relate to the Letter to BOE and the E-mail from BOE and accompanying materials/instructions. The **Clerk shall, within 7 days of entry of this Order, produce to the Defendant this information.** Otherwise, Requests #19 and #28 are **DENIED**. Defendant has failed to show any reasonable need for information beyond that provided herein. That is, the information provided herein, appearing fully responsive to any need to verify the origin and veracity of the source list, is sufficient and the request for any additional verifying information and correspondence is otherwise **DENIED**. If the source lists have already been verified by the Kentucky Board of Elections, and if the Master Wheels and Qualified Wheels consist of subsets of data from the source list, [see Jury Plan, § 5.4], then it is unclear how the concept of further "verification" is even relevant. *United States v. Oldham,* 995 F.Supp.2d 789, 800 (E.D. Mich. 2014) (denying access to source data and holding that

---

[5] The Current AO-12, London Division reflects 40,020 names, but that number correlates to the District-wide Master Wheel. [R. 327-2].

defendant's mere desire to "validate" the information "does not provide a basis for questioning the accuracy of the information to which defendant has access or the court clerk's performance of the duties mandated under the juror selection plan"). Moreover, Defendant will have access to the relevant demographic data (and AO-12s, JS-12s and Master Wheel data), as ordered produced per this Order. The raw data in the original source list is not reasonably necessary to any fair cross-section challenge Defendant might raise, particularly given the other demographic information provided herein.  *See Diaz*, 236 F.R.D. at 483 (finding that access to raw data from original source lists is not authorized by the Act, as such lists are not necessary to preparation of fair cross-section challenge when defendants have otherwise been furnished with demographic data relating to pertinent jury wheels); *Rice*, 489 F. Supp. 2d at 1317–18 (same); *McLernon*, 746 F.2d at 1123 ("we conclude that appellant's unqualified right to inspection was satisfied by disclosure of the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected.").

> 21. Were additional names added to the Master Jury Wheel as described in the Jury Plan Section 6.5? If so, when were the additional names added?

After consultation with the Clerk, the Court advises that no additional names were added to the Master Wheels.

> 23. The District and all Divisional Master Jury Wheel data for each division as described in the Jury Plan Section 6.1 in electronic and accessible form that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

> 24. The District and all Divisional Qualified Wheel data for each division as described in the Jury Plan Section 6.6 in electronic and accessible for that includes Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County, and Jury Division.

To the extent this Request seeks information and data concerning current (2021) and past (2019, 2017) Master Wheels, Qualified Wheels, and Pools, District-wide, including Juror

Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, and County, the Request is **GRANTED**.[6] Under *Test,* a criminal defendant "has essentially an unqualified right to inspect jury lists." *Test*, 420 U.S. at 750; *see also* 28 U.S.C. §§ 1861, 1867, 1868; *McLernon*, 746 F.2d at 1123 (ordering disclosure of "the Master Lists and the relevant demographic data about the general pool from which the specific grand jurors were selected"); *United States v. Curry,* 993 F.2d 43, 44 (4th Cir.1993) (reversing district court and holding that a litigant is "entitled to inspect, reproduce, and copy the master jury list to support a motion . . . based upon a substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury"); *O'Reilley*, 2008 WL 302310 at *2 (finding that "access to the demographic data concerning the current master and qualified jury wheels appropriate . . . [but] begins and ends with the relevant master jury list, and accompanying demographic data")(citations omitted); *Rice*, 489 F.Supp.2d at 1318 (granting defendant "inspection of this district's database which contains both the list of 100,000 names in the master jury wheel . . . and the list of 30,029 names in the qualified wheel"); *Diaz,* 236 F.R.D. at 481 (ordering disclosure of master and qualified jury lists along with JS-12s); *Causey*, 2004 WL 1243912 at *12 (similar); *United States v. Warshak*, No. 1:06-CR-00111, 2007 WL 3406998, at *4 (S.D. Ohio Nov. 13, 2007) (similar). Accordingly, the **Clerk SHALL, within 14 days of entry of this Order, produce to the Defendant the data related to the current (2021) and past (2019, 2017) Master Wheels, Qualified Wheels, and Pools, District-wide,** including, to the extent available, Juror Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, and County of residence.  The

---

[6] The Court notes that because not all persons on the Master Wheel have been sent qualifying questionnaires (and some have not returned them), the demographic data requested is not available for all those persons on the Master Wheels.

Clerk **shall redact and not provide or disclose the jurors' names, addresses, dates of birth (other than year), and any other personal identifying information**

To the extent this Request seeks information and data prior to the 2017 jury wheels, the Request is **DENIED**. *See* response to Request #8 above; *McLernon,* 746 F.2d at 1123; *United States v. Kilpatrick*, No. 10-CR-20403, 2012 WL 3133939, at *8 (E.D. Mich. Aug. 1, 2012) ("However, even if [defendant] seeks to challenge the jury selection process as a whole, and not simply the selection of the grand jury relevant to his case, then the historical records that are publicly available are sufficient."); *Oldham*, 995 F. Supp. 2d at 801 ("In sum, the Court is satisfied . . . that the information and materials available to Defendant under 28 U.S.C. § 1868, this District's juror selection plan, and Administrative Order No. 00-A0-060 provide sufficiently fertile ground for Defendant's desired inquiry into a possible fair cross section violation.").

> 25. Status Codes for potential jurors who were selected from the Master Jury Wheel for qualification who either had their qualification form returned by the postal service, did not respond or were disqualified or exempted or excused from jury service or qualified for jury service as described in the Jury Plan. The data should be in electronic and accessible form that include Juror Number, whether the form was returned Undeliverable, whether the form was not returned, Reasons for Disqualification/Exemption/Excuse/Qualification, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City, County and Jury Division.

To the extent this Request seeks status codes for potential jurors who were selected from the current Master Jury Wheel for qualification, District-wide, the Request is **GRANTED**. Accordingly, the **Clerk SHALL, within 14 days of entry of this Order, produce such information to the Defendant.** *United States v. Crider*, No. 21–CR–1364–JAH, 2021 WL 4226149 at *6 (S.D. Cal. Sept. 15, 2021) (directing the Clerk to produce to the defendant Status Code information contained on the master jury wheel from which the grand jury that returned the original indictment against defendant);

*United States v. Ramirez-Ortiz*, No. 20–CR–2667–GPC, 2021 WL 1662441 at *4-5

(S.D. Cal. Apr. 28, 2021) (granting, to the extent it is available, Status Codes for potential

jurors who were selected from the Master Jury Wheel for qualification but either had

their qualification form returned by the postal service, did not respond, or were

disqualified or exempted from jury service); *United States v. Todd*, No. 20–CR–256

(KAM), 2020 WL 5981673 at *5 (E.D.N.Y. Oct. 8, 2020).

> 26. If there was a drawing of a jury of the district as described in the Jury Plan
>     Section 13.1, the comingled Qualified Jury Wheel as described in the Jury
>     Plan Section 13.1 (3) in electronic and accessible form that includes Juror
>     Number, Race, Gender, Hispanic Ethnicity, Year of Birth, Zip Code, City,
>     County, and Jury Division but not any personal information or information
>     that could be used to identify any individual such as Name or Street Address.

Defendant's jury will be drawn from the Qualified Wheel, London Division, not the

District as a whole. This Request seeks irrelevant information and is **DENIED**.

> 27. The Juror Number only (and not Name or Street Address) for persons selected
>     as potential trial jurors in this case.

This case is set for trial on April 18, 2022. No trial jurors have been noticed to appear,

but the standard information for trial jurors shall be made available to counsel of record no later

than seven days in advance of the trial (or earlier upon motion by counsel and as reasonably

available from the Clerk), along with the additional information ordered produced in response to

Request # 29. *See* Jury Plan, § 9.2. Accordingly, this Request is **GRANTED** but is currently

**premature**.

> 29. The juror qualification and summons forms for persons summoned to
>     potentially become trial jurors in this case.

The Jury Plan, §§ 9.1–9.5, provides the procedure for the pre-trial disclosure of

information concerning trial jurors noticed to appear, which addresses generally the information

sought by the Defendant in this Request and which shall be followed in this case.  In addition to

disclosure of the information listed in § 9.2 of the Jury Plan, **the Clerk is ORDERED to provide the following additional information no later than seven days prior to the trial in this matter (or earlier upon motion by counsel and as reasonably available from the Clerk) concerning jurors noticed to appear in this case: race, gender, Hispanic ethnicity, year of birth, and county.**

To the extent this Request seeks the actual juror qualification forms or summons for those jurors who are ultimately noticed to appear as trial jurors, the request is **DENIED**. The current AO-12, London Division, and the other information ordered produced herein contain the relevant demographic information needed to evaluate a jury challenge. *See McLernon*, 746 F.2d at 1122–23 (upholding district court's denial of disclosure of grand juror questionnaires); *Rice*, 489 F.Supp.2d at 1319 (denying access to juror questionnaire forms and reasoning that "courts have displayed profound reluctance to provide litigants with access to such materials, given the personal information contained on such questionnaires and the apparent unhelpfulness of such questionnaires in assessing the viability of any fair cross-section challenge"); *United States v. Davenport*, 824 F.2d 1511, 1514–16 (7th Cir. 1987) (denying access to juror questionnaires, finding that disclosure would create a "possibility of substantial abuse of the information the forms contain"). The relevant information the Defendant needs to analyze and potentially file a motion under the Act or Constitution will be available to him through the other information ordered disclosed pursuant to this Order (i.e., the AO-12s and JS-12s; data concerning the current (2021) and past (2019, 2017) Master Wheels, Qualified Wheels, and Pools; juror information as required by the Jury Plan, § 9.2 and as ordered herein; and status codes). *See Allen*, 160 F.3d at 1103 ("[I]t has long been the case that defendants are not entitled to a jury of any particular composition—only to a panel from which distinctive groups were not

'systematically excluded.'" (internal citations omitted)); *Ambrose v. Booker*, 684 F.3d 638, 645

(6th Cir. 2012) ("The Sixth Amendment guarantees only the opportunity for a representative

jury, not a representative jury itself.").

To the extent this request seeks the *blank forms* used by the Clerk to qualify and

summons potential jurors, the Request is **GRANTED**. The **Clerk SHALL, within 7 days of**

**entry of this Order, produce such forms to the Defendant.**

30. <u>The disposition of each summoned potential trial juror in this case as to
excusal, deferment, disqualification or selection as described in the Jury Plan.</u>

To the extent this Request seeks status codes reflecting excusals, deferment,

disqualification or selection for the London Pool #401 this Request is **GRANTED per the**

**response to Request #25**. The Court notes that this case is set for trial on April 18, 2022. No

trial jurors have been noticed to appear. Accordingly, to the extent this Request seeks such status

codes at a point in time closer to the trial date, the Request is **DENIED as premature**.

Defendant may renew this request for updated information.

31. <u>Items #23 (Master Jury Wheel), #24 (Qualified Jury Wheel), #25 (Status
Codes), and #28 (Source Data) which were created from source data from the
2020, 2018, 2016, 2014 federal general elections.</u>
32. <u>The Juror Number, Pool Number and Date of Summoning for each person
summoned for jury service since June 1st, 2015.</u>

Pursuant to this Order, much of the information sought in these Requests is being ordered

disclosed. *See* responses to Requests #7, #8, #23, #24, #25, #28, #30. The information ordered

disclosed will provide Defendant with information sufficient to analyze and potentially file a jury

challenge and to "verify information on the AO-12." [R. 339–1, p. 3]. Otherwise, these Requests

are astoundingly broad, unduly burdensome, and generally irrelevant for the reasons already

articulated herein. Accordingly, to the extent these Requests seek additional information, the

Requests are **DENIED**. Defendant has made no showing justifying the disclosure of information

going back 8-10 years other than generally stating it will "allow a larger sample for statistical purposes." [R. 339–1, p. 4]. This reason is insufficient. *See* response to requests #23, #24. Neither the Act, nor the relevant case law, gives a defendant the right to conduct an eight-to-ten-year audit of the Clerks Office's implementation of its Jury Plan. "[C]ourts examining the Act have routinely limited the scope of the information provided to the particular jury selection processes and methods applied in the defendant's case." *Rice*, 489 F.Supp.2d at 1321. As the Rice court reasoned:

> It matters not for purposes of any challenge [the defendant] might make what the composition of the jury pool for a grand jury or petit jury empaneled in this District Court [ten years ago] might have been. All that matters is whether the jury selection process applied with respect to the grand jury that indicted [defendant] was in substantial compliance with the Act.

*Id*.; *see also McLernon*, 746 F.2d at 1122–23. "The Act is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court." *Rice*, 489 F. Supp. 2d at 1316.

## III.   PROTECTIVE ORDER

The documents produced pursuant to this Memorandum Opinion and Order are subject to the Protective Order set forth herein. 28 U.S.C. § 1867(f). Counsel, their legal staff, experts and consultants are bound by this Protective Order:

1. The materials may be used only by counsel, their legal staff and experts in connection with the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures and may not be disclosed. The materials may not be used for purposes of jury selection, trial, or any other matter other than the preparation and/or litigation of a motion in this case challenging the District's jury selection procedures.

2. **The materials either must be returned to the Court at the commencement of jury selection, or counsel, their staff, and their experts and consultants must certify that the materials have been destroyed and that no materials have been retained in any duplicative form.**

3. The Clerk of the Court shall file a **SEALED COPY** of the records and materials ordered disclosed herein on the docket for purposes of maintaining a record of the production.

4. Consistent with 28 U.S.C. § 1867(f), the materials may not be disclosed, shown or distributed in any manner to third parties, except experts and consultants. Similarly, the materials may only be disclosed to individuals who have a need to view the materials for the purposes outlined herein.

5. Defendant shall not possess the materials at any time, except when reviewing the materials with counsel, and then counsel shall retrieve and maintain all such materials.

6. Every attorney who accesses the materials is personally responsible not only for his or her compliance with this Protective Order, but also his or her client's compliance with the requirements of this Protective Order and compliance by any staff member, expert, or other person who is shown the materials consistent with the parameters of this Memorandum Opinion and Order.

7. **<u>Penalties:</u>** Counsel, their staff, experts, consultants, defendants, and the government are reminded that "[a]ny person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both." 28 U.S.C. § 1867(f).

IV.     **CONCLUSION**

The Court being otherwise sufficiently advised and for the reasons stated herein,

Defendant's Motion For Production of Jury Data, **[R. 327],** is **GRANTED IN PART**

**and DENIED IN PART.**

This the 7th day of February 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY